UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

In re                                      :    Chapter 7

MYLOTTE, DAVID & FITZPATRICK      :

Debtor                :    Bankruptcy No. 07-14109bf

..................................................

MEMORANDUM

..................................................

On July 17, 2007, Arden Seven Penn Partners, LP, Sir Lancelott Courier

and Delivery Service, Graebel Eastern Movers, Inc., and Summit Court Reporting, Inc.

filed an involuntary chapter 7 petition against the general partnership known as Mylotte,

David & Fitzpatrick.  Mylotte filed an answer in opposition to the involuntary petition,

pursuant to Fed. R. Bankr. P. 1011.  An evidentiary hearing was held after certain

discovery and other disputes were resolved.

This is the second involuntary petition filed against Mylotte.  The first

petition was filed by a single creditor, Mr. Frederick Hanselmann, on March 23, 2007,

and was docketed at Bankruptcy No. 07-11861.  Thereafter, Arden Seven Penn Partners,

LP, Sir Lancelott Courier and Delivery Service, Graebel Eastern Movers, Inc., and

Summit Court Reporting, Inc. sought to join in the petition pursuant to 11 U.S.C. §

303(c).

By memorandum and order dated July 12, 2007, I denied their joinder

petition after concluding that Mr. Hanselmann either knew or should have known when

he filed his involuntary petition that Mylotte had twelve or more creditors within the

meaning of section 303(b), such that three petitioning creditors were required.  In re

Mylotte, David & Fitzpatrick, 2007 WL 2033812 (Bankr. E.D. Pa. 2007).  The joinder

denial, however, was "without prejudice to those joinder creditors filing their own petition if they so choose." Id., at *12.  This led to their present involuntary petition.

In the course of the trial of the first involuntary petition against Mylotte, I concluded that the statutory requirement of section 303(h)(1) was established: viz. Mylotte was generally not paying its debts as such debts became due.  Id., at *5:

> Here, the evidence reflects that Mylotte [a general partnership
> law firm] was not operating at the time of the involuntary
> petition.  The firm was unable to pay its bank lender, was
> routinely delinquent in federal wage tax withholdings when it
> was operating, was significantly delinquent in city taxes,
> owed its former landlord more than $300,000, had not paid its
> moving company when it moved to Broomall in 2005, was
> unable to pay three law firms representing it in various
> litigation, and owed numerous court reporter charges.  These
> unpaid debts were substantial, of long standing, and habitual.
> Thus, if the only issue were that posed by section 303(h), Mr.
> Hanselmann would have met his burden, as Mylotte was not
> paying its undisputed debts as they became due.

Moreover, at the conclusion of the first trial, Mylotte did not contest that the claims of these four creditors were not subject to any bona fide dispute, therefore, their joinder, if allowed, would meet the three creditor requirement of section 303(b)(1).  Id., at *8.  Thus, but for the absence of three petitioning creditors as required by section 303(b)(1), the first involuntary petition against Mylotte met all statutory requirements of section 303.

As will be discussed below, Mylotte's financial circumstances have not changed from July 2007, when the first involuntary trial took place.  Thus, Mylotte has stipulated in open court for purposes of this second involuntary petition that it is not operating, it is generally not paying its debts as they come due, that the four petitioning creditors hold claims not subject to bona fide dispute, and that these claims aggregate far

2

more than the statutory threshold set forth in 11 U.S.C. § 303(b)(1).  N.T. at 9:35 to 9:38[1];

see also Ex. J-1.  In short, Mylotte agreed at the outset of trial that all of the elements

under section 303 for the entry of an order for relief were present.

Despite this concession, Mylotte contends that no order for relief should be

entered.  It argues that this involuntary petition should be dismissed pursuant to 11 U.S.C.

§ 305 because Mylotte is a party to a "quasi-receivership" proceeding in state court and

because it has no unencumbered assets.  Arden and the other petitioning creditors dispute

Mylotte's description of the state court litigation, and believe that assets that a bankruptcy

trustee could administer may exist.  Thus, they oppose dismissal.

The following facts relevant to section 305 were proven.[2]

I.

Mylotte is a general partnership that formerly operated as a law firm

specializing in insurance defense.  The firm was founded in 1979.  N.T. at 9:54.  At all

relevant times, the firm had three "equity partners," plus various non-equity partners and

associate attorneys.  The firm ceased practicing law on February 9, 2007.  N.T. at 10:06.

---

[1]Reference to the Notes of Testimony ("N.T.") shall include the precise time of
day that the testimony was given on September 14, 2007, as noted on the audio disc.  No party
ordered a written transcript of the trial.

[2]The factual findings under Fed. R. Bankr. P. 7052 will be made in narrative
format.  The factual findings are based upon the evidence at the second trial, and are also
borrowed from findings previously made in the first involuntary trial, as the parties stipulated the
evidence from that prior hearing be incorporated into the evidentiary record of the second trial.
N.T. at 9:36; see also Ex. J-1, ¶ 2.

On April 13, 2005, Arden, the former lessor, commenced a breach of a commercial lease lawsuit against Mylotte in the Court of Common Pleas of Philadelphia County, First Judicial District of Pennsylvania, Civil Trial Division, docketed at Case No. 05-1545, April Term 2005.  Ex. D-1.  The case was assigned to the Honorable Albert Sheppard, Jr.  Id.  On January 9, 2007, judgment was rendered in favor of Arden against Mylotte in the amount of $377,000.  Id.

Arden then recorded this judgment in other Pennsylvania counties, including Bucks, Delaware, and Montgomery.  N.T. at 10:01.  It made attempts to execute on this judgment in Philadelphia County, where it was originally entered, as well as in the transfer counties.  N.T. at 10:02; see also Ex. D-7.

Besides its judgment debt to Arden, Mylotte has at least two other creditors to which it owes substantial sums.  Throughout the duration of its practice, Mylotte received various loans from Wilmington Trust Company.  N.T. at 9:54.  Mylotte owes Wilmington Trust approximately $650,000, on three different loans, some of which date back to the early 1990's.  See Ex. D-6.  Wilmington Trust asserts a security interest in all of the assets of Mylotte, including the firm's accounts receivable.  N.T. at 9:55. Wilmington Trust, however, has not instituted suit in any state court in order to collect on delinquent loans, N.T. at 11:41; however, it has garnished certain bank accounts held by the firm, as well as various accounts receivable.  N.T. at 9:56.  The Wilmington Trust debt is probably guaranteed by Mylotte's general partners and their spouses and this creditor may have liens against their homes.  N.T. at 10:26.[3]

---

[3]No documents were offered in evidence reflecting the extent of Wilmington Trust's purported security interests.

4

Mylotte's other significant creditor is the City of Philadelphia (hereinafter "City"). Mylotte owes outstanding taxes to the City. N.T. at 9:58. In order to collect these taxes, the City filed suit against Mylotte and its general partners, Edward J. David, Charles A. Fitzpatrick, III, and John A. Fitzpatrick, in the Court of Common Pleas, Philadelphia Co., Feb. Term 2005, No. 001479. Ex. D-4. A stipulated judgment was entered against the Mylotte firm for $1.7 million; a judgment for the same amount was entered against the individual partners. N.T. at 9:58; see Ex. D-4 (Attachment A). The City has garnished or has attempted to garnish various receivables owed to the Mylotte firm in order to collect on its judgments. Id. at 9:59. There may be litigation between Wilmington Trust and the City involving issues of lien priority concerning certain receivables. N.T. at 9:55-56.[4]

In addition, in March 2007, the City moved in its February 2005 state court civil action for the appointment of a receiver to control the assets of Mylotte, on the allegation that there was significant potential that the partners would waste and dissipate the assets of the firm. Ex. D-4. Mylotte opposed this motion, arguing that there were no unencumbered funds with which to pay a receiver and that Judge Sheppard was already acting as a "quasi-receiver." Ex. D-5. The City's receivership request has been stayed by the filing of the two involuntary bankruptcy petitions. N.T. 11:23; see 11 U.S.C. § 362(a); see generally Interpool, Ltd. v. Certain Freights of the M/Vs Venture Stare,

---

[4]There was also state court litigation between Mylotte and Mr. Hanselmann commenced on September 2, 1999, docketed at C.P. Montg. Co. No. 99-15907. In connection with the first involuntary petition, the parties announced in open court, on September 6, 2007, that they reached a settlement, by which Mylotte agreed that Mr. Hanselmann is owed $75,000, Mr. Hanselmann agreed that he had no claim against the general partners, and Mylotte would forego any claim under section 303(i) against Mr. Hanselmann. The parties stated their intention to file a stipulation memorializing this settlement, but have not done so in this court.

Mosman Star, Fjord Star, Lakes Star, Lily Star, 878 F.2d 111, 112 n. 4 (3d Cir.1989); In re BankVest Capital Corp., 2003 WL 1700978, at *6 (D. Mass. 2003), aff'd, 375 F.3d 51 (1st Cir. 2004).[5]

In February 2007, Arden filed a motion in its April 2005 civil action against Mylotte seeking to enjoin the defendant from selling or liquidating any assets. That motion was denied by an order dated February 13, 2007. Ex. D-2. Instead, Judge Sheppard entered an order dated February 14, 2007 granting Mylotte's motion to stay all proceedings in the April 2005 Arden civil action until further order of that court. Ex. D-3. In addition to staying all proceedings, the state court directed Mylotte: to turn over to the Court and Arden information regarding Mylotte's debts, id. at ¶ 1; to "place in an interest bearing escrow account at Citizens Bank all monies received from the sale of any of defendant's assets and any receivables acquired by defendant and not taken by Wilmington Trust . . ." ex. D-3, at ¶ 2; and to "pay necessary court costs for open files but defendant shall maintain a strict list of those monies. The defendant shall make no other distributions without authorization of the court." Id. at ¶ 3 (emphasis in original).

After February 14th, Mylotte did not provide Arden or the state court with information regarding all of its debts. N.T. at 11:06-07. Moreover, Arden filed a notice of appeal from the February 14, 2007 state court order. Ex. D-1. That appeal was dismissed without prejudice when the state appellate court learned of the first involuntary bankruptcy petition against Mylotte. Ex. D-1.

---

[5]Mr. Hanselmann also moved for a receiver in his state court litigation and that request was also opposed by the partnership. See In re Mylotte, David & Fitzpatrick, 2007 WL 2033812, at *3. That motion was also stayed by the involuntary petitions.

The February 14th order did not end disputes between Mylotte and Arden. Mylotte sent letters and facsimile transmissions to Judge Sheppard complaining of Arden's continuing efforts to execute on its judgment after February 14th. Arden, in turn, filed a March 2007 motion in Delaware County, C.P. No. 07-0831, to sanction Mylotte for selling its office furniture located in Delaware County, after that furniture was levied upon by the Sheriff of Delaware County on February 8, 2007. Ex. D-8. Mylotte answered this motion by asserting that the February 13th and 14th orders permitted it to sell its assets. Id. This motion may still be pending.

In the Arden litigation in Philadelphia, Judge Sheppard entered an order on March 1, 2007 prohibiting Arden from obtaining post-judgment discovery from non-parties such as Mylotte's general partners. Ex. D-1. The state court also issued orders permitting Mylotte to pay certain modest expenses. Id. The state court docket does not reflect the method by which Mylotte sought permission to pay these expenses, nor whether notice and an opportunity for a hearing was afforded interested parties. Id.

Mylotte estimates that it has approximately $550,000 to $625,000 in collectible accounts receivable. N.T. 10:03. The firm also has funds from the sale of its law firm furnishings, telephone systems, computers, and other office equipment. N.T. 10:03-04. These items were sold for approximately $20,000, and the proceeds are in a bank account opened in connection with the February 14th order. N.T. 10:04. Mylotte also asserts a claim against Tyler Tomlinson, Esquire, a former Mylotte attorney (and now attorney for the four petitioning creditors), which claim involves approximately $800,000 held in escrow. N.T. 10:04-05. This claim was scheduled for trial in state court in September 2007.

7

In terms of liabilities, Mylotte admitted during the first trial that it had more than 31 creditors, including a number of law firms and court reporting firms, to whom it was indebted.  In re Mylotte, David & Fitzpatrick, 2007 WL 2033812, at *4-*5.

The only general partner who testified during the second involuntary trial was Mr. Charles A. Fitzpatrick.  Mr. Fitzpatrick testified that the sole asset owned solely by him is his automobile.  N.T. at 10:27.  His other assets are owned jointly with his wife.  Id.  The financial circumstances of the other partners is unknown, and Arden was precluded by the state court from taking discovery on this issue.

Finally, Mylotte filed a state court motion for "coordination of actions" under Pa. R. Civ. P. 213.1,[6] which motion has been assigned to Judge Sheppard.  That

---

[6]This procedural rule provides as follows:

(a) In actions pending in different counties which involve a common question of law or fact or which arise from the same transaction or occurrence, any party, with notice to all other parties, may file a motion requesting the court in which a complaint was first filed to order coordination of the actions.  Any party may file an answer to the motion and the court may hold a hearing.

(b) The court in which the complaint was first filed may stay the proceedings in any action which is the subject of the motion.

(c) In determining whether to order coordination and which location is appropriate for the coordinated proceedings, the court shall consider, among other matters:

(1) whether the common question of fact or law is predominating and significant to the litigation;

(2) the convenience of the parties, witnesses and counsel;

(3) whether coordination will result in unreasonable delay or expense to a party or otherwise prejudice a

(continued...)

motion is still pending.  The motion itself has not been offered in evidence, but the

testimony suggests that Mylotte sought to coordinate before Judge Sheppard only its

disputes with Arden taking place in various Pennsylvania counties.  N.T. at 11:34-:36.

--------------------------------------------------------------

[6](...continued)
           party in an action which would be subject to
           coordination;

           (4) the efficient utilization of judicial facilities and
           personnel and the just and efficient conduct of the
           actions;

           (5) the disadvantages of duplicative and inconsistent
           rulings, orders or judgments;

           (6) the likelihood of settlement of the actions
           without further litigation should coordination be
           denied.

     (d) If the court orders that actions shall be coordinated, it may

           (1) stay any or all of the proceedings in any action
           subject to the order, or

           (2) transfer any or all further proceedings in the
           actions to the court or courts in which any of the
           actions is pending, or

           (3) make any other appropriate order.

     (e) In the order of coordination, the court shall include the manner
     of giving notice of the order to all parties in all actions subject
     thereto and direct that specified parties pay the costs, if any, of
     coordination.  The court shall also order that a certified copy of the
     order of coordination be sent to the courts in which the actions
     subject to the order are pending, whereupon those courts shall take
     such action as may be appropriate to carry out the coordination
     order.

     (f) The final order disposing of a coordinated action or proceeding
     shall be certified and sent to the court in which the action was
     originally commenced to be filed of record.

9

Mylotte has not sought coordination of the lawsuits filed against Mylotte by Mr.

Hanselmann, the City, and Arden.  Id.  If it were to do so, I note that the Arden lawsuit

was commenced after the lawsuits brought by Mr. Hanselmann and the City.


II.


As noted earlier, Mylotte concedes that the four petitioning creditors have

established all of the elements for the entry of an order for relief under 11 U.S.C. § 303.

However, pursuant to 11 U.S.C. § 305(a)(1), a bankruptcy court "may dismiss a case

under this title, or may suspend all proceedings in a case under this title, at any time if—

(1) the interest of creditors and the debtor would be better served by such dismissal or

suspension."

The legislative history behind the enactment of section 305 provides:

> A principle of the common law requires a court with
> jurisdiction over a particular matter to take jurisdiction.  This
> section recognizes that there are cases in which it would be
> appropriate for the court to decline jurisdiction.  Abstention
> under this section, however, is of jurisdiction over the entire
> case.  Abstention from jurisdiction over a particular
> proceeding in a case is governed by proposed 28 U.S.C.
> 1471(c).  Thus, the court is permitted, if the interests of
> creditors and the debtor would be better served by dismissal
> of the case or suspension of all proceedings in the case, to so
> order.  The court may dismiss or suspend under the first
> paragraph [section 305(a)], for example, if an arrangement is
> being worked out by creditors and the debtor out of court,
> there is no prejudice to the results of creditors in that
> arrangement, and an involuntary case has been commenced by
> a few recalcitrant creditors to provide a basis for future threats
> to extract full payment.  The less expensive out-of-court
> workout may better serve the interests in the case. . . .

Sen. Rep. No. 95-989, 95th Cong. 2d Sess., at 35-36 (1978).

Based upon this legislative history, courts have applied section 305 to involuntary petitions.  See, e.g., Matter of Axona Intern. Credit & Commerce Ltd. (Formerly Bancom Intern. Ltd.), 924 F.2d 31 (2d Cir. 1991); In re P & G Realty Corp., 157 B.R. 239 (Bankr. W.D. Pa. 1993); In re Trina Associates, 128 B.R. 858 (Bankr. E.D.N.Y. 1991); see also In re Colonial Ford, Inc., 24 B.R. 1014, 1020 (Bankr. Utah 1982) ("Section 305(a)(1) applies in any case, voluntary or involuntary, 'under this title.'").  The statutory provision is applicable even when all the elements of section 303 have been met.  See In re Williamsburg Suites, Ltd., 117 B.R. 216, 218 (Bankr. E.D. Va. 1990).

Whether to dismiss a case or abstain pursuant to section 305 is committed to the discretion of the bankruptcy court, and is determined based upon the totality of the circumstances.  See, e.g., In re Macke Intern. Trade, Inc., 370 B.R. 236, 247 (B.A.P. 9th Cir. 2007); see generally In re Argus Group 1700, Inc., 206 B.R. 737, 755 (Bankr. E.D. Pa. 1996).  Application of section 305 is an extraordinary remedy.  In re Mazzocone, 200 B.R. 568, 575 (E.D. Pa. 1996); In re Fortran Printing, Inc., 297 B.R. 89, 94 (Bankr. N.D. Ohio 2003).  A court will only abstain or dismiss a case if it is in the best interest of the creditors and the debtor.  See In re Pennino, 299 B.R. 536, 538-39 (B.A.P. 8th Cir. 2003); In re Mazzocone, 200 B.R. at 575.  The evidentiary burden is upon the party seeking dismissal or abstention under section 305(a).  See In re R & A Business Associates, Inc., 1999 Bankr. Lexis 543, at *51 (Bankr. E.D. Pa.), aff'd, 1999 WL 820859 (E.D. Pa. 1999); In re Corino, 191 B.R. 283, 287 (Bankr. N.D.N.Y. 1995); In re Martin-Trigona, 35 B.R. 596, 600 (Bankr. S.D.N.Y. 1983).

11

Some of the non-exclusive factors commonly considered when a motion under section 305(a) is determined are:

> (1) economy and efficiency of administration; (2) whether another forum is available to protect the interests of both parties or there is already a pending proceeding in a state court; (3) whether federal proceedings are necessary to reach a just and equitable solution; (4) whether there is an alternative means of achieving the equitable distribution of assets; (5) whether the debtor and the creditors are able to work out a less expensive out-of-court arrangement which better serves all interests in the case; (6) whether a non-federal insolvency has proceeded so far in those proceedings that it would be costly and time consuming to start afresh with the federal bankruptcy process; and (7) the purpose for which bankruptcy jurisdiction has been sought.

In re R & A Bus. Assoc., Inc., 1999 Bankr. LEXIS 543, at *53-*54; see also In re Mazzocone, 200 B.R. at 575; In re Greene, 1999 WL 761091, at *4 (E.D. Pa. 1999).

Mylotte contends that dismissal under section 305(a) is warranted because state court Judge Sheppard is acting as a "quasi-receiver," and the partnership has no unencumbered assets with which to fund a chapter 7 liquidation.  Arden and the other petitioning creditors oppose dismissal.  They complain that the state court has no authority to act as a "quasi-receiver," there are no procedures in place to protect the interests of all creditors in liquidating Mylotte's assets in the various state court proceedings, and they challenge the putative debtor's assertion regarding the validity and scope of the liens asserted by Wilmington Trust.

In reviewing reported decisions involving section 305(a), I agree with Mylotte that courts have applied this provision after concluding that there is pending litigation in a non-bankruptcy forum that can adjudicate the respective interests of all

12

parties fairly and economically.  As noted in In re Macke Intern. Trade, Inc., 370 B.R. at

247:

> Typical circumstances for dismissing under § 305(a)(1)
> include the pendency of proceedings such as assignments for
> the benefit of creditors . . . state court receiverships . . . or
> bulk sale agreements. . . .  Another consideration is where
> there are few, if any, valuable nonexempt assets and the
> administrative expenses would likely consume the entire
> estate. . . .

(citations omitted); see also In re 801 South Wells Street Ltd. Partnership, 192 B.R. 718,

724 (Bankr. N.D. Ill. 1996) ("A suitable alternative forum will be deemed to exist if in

that forum 'there are pending arrangements that will equitably satisfy the creditors and

not be unduly burdensome or prejudicial to the debtor,' so that continuation of the

bankruptcy proceeding will be 'duplicitous and uneconomical.'") (quoting In re RAI

Marketing Services, Inc., 20 B.R. 943, 946 (Bankr. D. Kan 1982)).

Consistent with this approach, an involuntary petition against a general

partnership was dismissed by a bankruptcy court under section 305(a), when the petition

was filed after commencement of a state court receivership, the state court had

determined that a receiver was warranted, and state law afforded a more economical and

efficient method for dissolving the partnership and liquidating its assets.  In re

Williamsburg Suites, Ltd., 117 B.R. at 220; see also Matter of Onyx Records, Inc., 42

B.R. 156 (Bankr. S.D.N.Y. 1984); In re Michael S. Starbuck, Inc., 14 B.R. 134 (Bankr.

S.D.N.Y. 1981).

Conversely, as the petitioning creditors argue, bankruptcy courts have

declined to apply section 305(a) when there was no receiver or state court liquidation

procedure in place, or when liquidation of the putative debtor's assets had not yet

commenced.  See, e.g., In re DGE Corp., 2006 WL 4452846 (Bankr. D.N.J. 2006); In re

Paper I Partners, L.P., 283 B.R. 661 (Bankr. S.D.N.Y. 2002); In re Manchester Heights

Associates, 140 B.R. 521, 523 (Bankr. W.D. Mo. 1992).  As explained by one court:

> Bankruptcy courts have abstained in favor of state court
> liquidation proceedings where the party seeking to invoke
> bankruptcy jurisdiction [i.e., the petitioning creditor] has
> allowed the state proceeding to proceed nearly to completion.
> For example, the case of In re Michael S. Starbuck, Inc., cited
> by Ciana, held that because the receiver had spent over 1,400
> hours on the case, had incurred costs, and had already begun
> the liquidation process, it would have been a waste of time
> and resources to proceed under Chapter 7.  That is not the
> case here because the liquidator has taken no action toward
> liquidating PRC.

In re Pallet Reefer Co., 233 B.R. 687, 695 (Bankr. E.D. La. 1999).

In this contested involuntary petition, upon consideration of all of the

evidence, I conclude that Mylotte has not met its burden to justify relief under section

305(a).  Pennsylvania has a procedure under Pa. R.Civ. P. 1533 for appointing receivers

for partnerships in limited circumstances:

> In cases arising out of the dissolution of a partnership, a court
> of equity may appoint a receiver to liquidate the partnership,
> to obtain an accounting of the proceeds and to distribute the
> assets. . . .  We have indicated, however, that the appointment
> of a receiver should not be hastily undertaken:
>
>> The power to appoint a receiver is a delicate
>> one, which is jealously safeguarded, and
>> reluctantly exercised, by the courts. The power
>> should be exercised sparingly, with caution and
>> circumspection, and only in an extreme case
>> under extraordinary circumstances, or under
>> such circumstances as demand or require
>> summary relief.
>
> Tate v. Philadelphia Transportation Co., 410 P. 490, 190 A.2d
> 316 (1963).

14

> Additionally, we have indicated in the past that receivers can
> be appointed to assure that partnership assets will not be
> dissipated, Sellers v. Hanratty, 343 Pa. 316, 22 A.2d 697
> (1941), but where the appointment will work an irreparable
> injury to the rights and interests of others, where greater
> injury will probably result from the appointment or where the
> appointment will do no good, a receiver should not be
> appointed. . . .

Hankin v. Hankin, 507 Pa. 603, 608 (1985) (citations omitted).  However, there is no

reported decision under Pennsylvania law providing for or mentioning a "quasi-receiver."

While the state court had the power to appoint a receiver for Mylotte, see

Levin v. Barish, 505 Pa. 514 (1984), the partnership opposed such relief when requested

by the City.  Whether Judge Sheppard could perform the same function, albeit in an

unofficial manner—and it is not clear from the February 14, 2007 order, Ex. D-3, that he

intended to do so—is unclear.  And if the state court were to so act, Arden is prepared to

challenge any such unofficial or informal procedure.

Mylotte also emphasizes its pending coordination motion to support its

contention that a state court forum could liquidate its assets and allow all its creditors to

participate.  From the testimony, however, this coordination request appears limited only

to Arden's multiple county efforts to execute upon its judgment, rather than the

coordination of all pending litigation against Mylotte.  Moreover, if Mylotte were to seek

broader coordination relief, it is not apparent from the language of Rule 213.1 that Judge

Sheppard could transfer and coordinate all of the litigation pending against Mylotte in the

various counties, as the Arden litigation was filed after the other lawsuits, see Lincoln

General Ins. Co. v. Donahue, 151 Pa. Cmwlth. 297, 304 n.6 (1992) ("By the plain

language of Rule 213.1, the decision whether to transfer and coordinate is restricted to the

court where the first complaint was filed."), and the various lawsuits may not "involve a

common question of law or fact or which arise from the same transaction or

occurrence[.]"  Pa. R. Civ. P. 213.1(a).  Arden's lawsuit against Mylotte involves non-

payment of rent; the City's lawsuit, which is against Mylotte and its general partners,

involves unpaid business taxes; and Hanselmann's lawsuit involves non-payment of

attorney compensation.  See N.T. 11:34-:35.

 Clearly, no ruling on the coordination issue has been made by the state

court.  In addition, Wilmington Trust has not filed any lawsuit against Mylotte and so may

not be involved in any coordinated action.[7]

 Therefore, as of the date of trial on this second involuntary petition, no

meaningful liquidation of the assets of the putative debtor had taken place, nor was it

imminent; only its office personal property had been liquidated.  Mylotte had not yet

provided information in the Arden litigation of all of its assets and liabilities.  There also

was no evidence of a coordinated proceeding, in or out of state court (such as an executed

assignment for the benefit of creditors or the appointment of a receiver or liquidating

trustee), to coordinate the claims of the various creditors, prioritize them, collect and

liquidate the assets of the putative debtor, and make distributions to creditors.  See In re

Manchester Heights Associates, 140 B.R. 521, 523 (Bankr. W.D. Mo. 1992) ("[N]o

evidence was presented to convince this Court that abstention is in the best interest of the

creditors.  There is no indication of a pending out of court arrangement that will better

_____

 [7]Pa. R. Civ. P. 213(a) affords a procedure for consolidating separate lawsuits, but
this rule is limited to lawsuits pending in the same county, and which "involve a common
question of law or fact or which arise from the same transaction or occurrence[.]" For the reasons
just noted in the text, consolidation of all the state court lawsuits against Mylotte may not be
possible.  See generally Com., Pennsylvania Liquor Control Bd. v. Veterans of Foreign Wars,
Shickshinny Post No. 5430, Home Ass'n, 131 Pa. Cmwlth. 224, 227 (1990).

serve the interests of the creditors.  Nor was there any evidence presented that other

creditors generally oppose this involuntary petition.").

     One forum, such as this bankruptcy court, with jurisdiction over all of

Mylotte's assets, see 28 U.S.C. § 1334(e), with the ability to determine the priority of

liens and creditor claims, and with procedures already in place to afford notice and

opportunity for all parties in interest to be heard, would be in the best interests of

creditors.  Moreover, were an order for relief to be entered, all creditors would continue

to be stayed by virtue of section 362(a) from executing upon Mylotte's assets while their

respective rights are determined.

     In addition to its failure to establish the pendency of a state court

proceeding that would economically liquidate its assets and adjudicate the rights of all

interested parties, Mylotte did not prove that any chapter 7 bankruptcy case would be

futile because all of its assets were encumbered.  Not only is the evidence sparse

regarding the scope and validity of the purported lien held by Wilmington Trust, but

Mylotte's contention overlooks 11 U.S.C. § 723(a).  That subsection affords a chapter 7

trustee of a general partnership a claim against each general partner, to the extent that

non-bankruptcy law would render the partner liable for partnership obligations, when the

partnership assets are insufficient to repay all valid claims.  See generally In re R & R

Associates of Hampton, 402 F.3d 257, 272 (1st Cir. 2005); In re Selheimer & Co., 319

B.R. 384, 392-93 (Bankr. E.D. Pa. 2005); See In re Blutrich Herman & Miller,

227 B.R. 53, 59 n.6 (Bankr. S.D.N.Y. 1998) ("The consequences to a partner of his

partnership's entry into chapter 7 liquidation can be substantial, for pursuant to section

723(a) of the Bankruptcy Code, the partnership's trustee has a claim against a general

17

partner to the extent that the partnership's property in insufficient to pay its debts in full if the general partner is personally liable for that deficiency under applicable non-bankruptcy law.").

Under Pennsylvania law, a general partner is liable for the debts of the partnership.  See 15 Pa. C.S.A. § 8327(2); TPS Technologies, Inc. v. Rodin Enterprises, Inc., 816 F. Supp. 345, 350 (E.D. Pa. 1993).  Thus, the general partners of Mylotte may be responsible for the debts of the law firm.  As there was little evidence concerning their ability to repay those obligations, one cannot now conclude that a chapter 7 liquidation of the partnership would be pointless.

Finally, I note that no creditors or other parties affirmatively support Mylotte's request for dismissal of the involuntary petition.  See In re NRG Energy, Inc., 294 B.R. 71, 81 (Bankr. D. Minn. 2003) ("Substantial support by creditors for abstention and a non-bankruptcy process is an important factor in the analysis.").  Neither Wilmington Trust nor the City attended the trial and voiced concerns about this involuntary petition.  The four petitioning creditors oppose dismissal.  Mr. Hanselmann filed his own involuntary petition, reflecting his desire to have bankruptcy oversight of Mylotte's liquidation of assets.  Therefore, creditors apparently do not believe that their interests would be furthered by dismissal of this case.

Accordingly, the better exercise of discretion is to deny Mylotte's request for dismissal under section 305(a).  See, e.g., In re DGE Corp., 2006 WL 4452846, at *4; In re R & A Bus. Assoc., Inc., 1999 Bankr. LEXIS 543, at *57-*58; Matter of Nina Merchandise Corp., 5 B.R. 743, 747-48 (Bankr. S.D.N.Y. 1980); see generally In re Taylor Agency, Inc., 281 B.R. 354, 362 (Bankr. S.D. Ala,2001); In re Pallet Reefer Co.,

18

233 B.R. at 696; In re Grigoli, 151 B.R. 314, 321 (Bankr. E.D.N.Y. 1993).[8]  An

appropriate order will be entered.

---

[8]If the chapter 7 trustee determines that there are no assets to administer, the partnership will not receive a bankruptcy discharge, see 11 U.S.C. § 727(a)(1), and this case will be promptly closed, thus leaving all parties to their state law remedies.  See In re Taylor Agency, Inc., 281 B.R. at 362.

UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

In re                                              :        Chapter 7

MYLOTTE, DAVID & FITZPATRICK           :

            Debtor                        :        Bankruptcy No. 07-14109bf

.................................................

ORDER

.................................................

AND NOW, this 11th day of October 2007, for the reasons stated in the
accompanying memorandum, it is hereby ordered that, based upon the involuntary
petition filed on July 17, 2007, an order for relief under chapter 7 of the Bankruptcy Code
is granted.

It is further ordered that the United States trustee shall appoint an interim
chapter 7 trustee pursuant to 11 U.S.C. § 701.

The putative debtor's motion to dismiss under section 305(a) is denied.

_____
BRUCE FOX
United States Bankruptcy Judge

copies to:

Albert A. Ciardi, III, Esquire
Dimitri L. Karapelou, Esquire
Ciardi & Ciardi, P.C.
One Commerce Square
2005 Market Street, Suite 2020
Philadelphia, PA 19103

Robert Tyler Tomlinson, Esquire
Stark & Stark, P.C.
892 Second Street Pike, Suite C
Richboro, PA 18954

Kevin P. Callahan, Esquire
Office of the U.S. Trustee
833 Chestnut Street, Suite 500
Philadelphia, PA 19107